UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THOMAS BROOKS, | Case No. 2:20-CV-565 JCM (EJY) |
| Plaintiff(s), | ORDER |
| v. | |
| SANOFI, S.A., et al., | |
| Defendant(s). | |

Presently before the court is Thomas Brooks's ("plaintiff") motion to remand. (ECF No. 6). GlaxoSmithKline LLC ("defendant") filed a response (ECF No. 10), to which plaintiff replied (ECF No. 12).[1]

Also before the court is defendant's motion to stay case. (ECF No. 11).

**I.  Background**

The instant action arises from plaintiff's use of Zantac, which he alleges caused his kidney and bladder cancer. (ECF No. 1-1 at 3). Plaintiff brought eight causes of action against defendant, amongst others, in state court: (1) strict liability—design defect, (2) strict liability—failure to warn, (3) negligence, (4) breach of express warranty, (5) breach of implied warranty, (6) negligent misrepresentation, (7) fraudulent concealment and/or omissions, and (8) violations of the Nevada Deceptive Trade Practices Act. *See generally id.* Defendant removed to this court on March 23, 2020, on the basis of diversity jurisdiction. (ECF Nos. 1; 9).

Plaintiffs now contend that defendant wrongfully removed this action with the sole purpose of having this case transferred to pending multidistrict litigation (the "MDL") regarding

---

[1] The parties briefed the remand motion on an expedited schedule, as plaintiff requested and the court ordered. (ECF Nos. 7; 8).

**James C. Mahan**
**U.S. District Judge**

Zantac. (ECF No. 6). Plaintiffs argue that defendant has not borne its burden of showing that the amount in controversy exceeds $75,000. *Id.*

**II.    Legal Standard**

   *A. Remand*

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

. . .

**James C. Mahan**
**U.S. District Judge**

*B. Stay*

Courts have broad discretion in managing their dockets. *See, e.g.*, *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936) (courts have the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants"). In exercising that discretion, courts are guided by the goals of securing the just, speedy, and inexpensive resolution of actions. *See* Fed. R. Civ. P. 1.

**III. Discussion**

As an initial matter, the court must determine which motion it will address first: the motion to remand or the motion to stay. From the court's review, few courts facing both a motion to remand and a motion to stay pending transfer to an MDL address both motions. In *Dunaway v. Purdue Pharma L.P.*, however, Judge Aleta Trauger, from the Middle District of Tennessee, held as follows:

> [I]f this case is not properly in the federal courts (either because we lack jurisdiction or because the removal was defective), then the case *should* be on a different track. Different litigation under different laws in different states is inherent to the federal system embraced by the limited jurisdiction of the federal courts.

*Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 809 (M.D. Tenn. 2019) (emphasis in original). Judge Trauger's analysis in *Dunaway* is persuasive. When considering a pending motion to stay, Judge Trauger explained as follows:

> The interests of judicial economy are furthered by putting a case, as expeditiously as possible, in a court that has the jurisdiction to resolve it. It would not be a good use of judicial resources for the JPML to devote its time and attention to a transfer from one federal court to another, if the ultimate legal reality is that neither court has or can have jurisdiction. Nor would it be a good use of the transferee court's resources for that court to have to deal with the intake and processing of a case only to realize, later, that the case should be in state court. It would be a waste of judicial resources for a case to proceed in the federal courts if, ultimately, a federal court is not the appropriate court to consider plaintiffs' claims. This court can imagine few greater wastes of a court's resources than consideration of a case that the court has no jurisdiction to decide.

*Id.* at 809 (internal citation, quotation marks, and alteration omitted).

1    This court agrees with that analysis. Thus, the court finds it appropriate in this case to
2 determine whether the court has jurisdiction before entertaining the motion to stay.

*A. Remand*

"In determining the amount in controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Invests., Inc*. 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

However, a removing defendant has the burden to prove by a preponderance of the evidence that the jurisdictional amount is met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996). "[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Thus, parties may submit supplemental evidence to show that the amount in controversy is in excess of $75,000. *Sanchez*, 102 F.3d at 403–04 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

Courts consider punitive damages in determining the amount in controversy when a plaintiff can recover punitive damages as a matter of law. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Courts generally look to jury awards in analogous cases in determining how to consider punitive damages towards satisfying the jurisdictional minimum. *See Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011). Courts may also consider attorney's fees in determining the amount in controversy if a plaintiff can recover such fees pursuant to a contract or statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

Here, plaintiff prays for the following relief:

> (a) For general (non-economic) and special (economic) damages in a sum in excess of the jurisdictional minimum of this Court;
>
> (b) For medical, incidental, and hospital expenses according to proof;
>
> (c) For pre-judgment and post-judgment interest as provided by law;
>
> (d) For full refund of all purchase costs Plaintiff paid for Zantac;

        (e) For compensatory damages in excess of the jurisdictional minimum of this Court;

        (f) For consequential damages in excess of the jurisdictional minimum of this Court;

        (g) For expenses and costs of this action; and

        (h) For such further relief as this Court deems necessary, just, and proper.

*Id.* at 34. Throughout his complaint, plaintiff also requests punitive damages and attorney fees. *Id.* at 19, 21, 22, 24, 25, 28, 33, 34.

As relevant in this case, a plaintiff can recover punitive damages under Nevada law only by proving with clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice. Nev. Rev. Stat. 42.005(1). Here, plaintiff alleges several causes of action that sound in fraud. (*See* ECF No. 1-1). Thus, in light of NRS 42.005, the court will consider punitive damages for jurisdictional purposes. However, neither party indicates under what statute, if any, plaintiff would be entitled to recover attorney fees. Therefore, the court will not consider attorney fees when determining the amount in controversy.

Plaintiff argues in both his motion and reply that defendant has failed to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. (*See generally* ECF Nos. 6; 12). In particular, plaintiff relies on the fact that the complaint alleges damages "in a sum in excess of the jurisdictional minimum of [the state] [c]ourt," to wit, $15,000. (ECF No. 1-1 at 34). But, as defendant points out, "Nevada state courts allow plaintiffs to plead only that their damages are 'in excess of $15,000,' so it is often the case that the amount in controversy is not apparent from a simple examination of the [c]omplaint." (ECF No. 10 at 3–4 (citing Nev. R. Civ. P. 8(a)(4))).

The court finds that the allegations in the complaint establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Plaintiff requested "medical, incidental, and hospital expenses"; to date, he has already undergone "3 bladder surgeries, Transurethral Resection of Bladder Tumor (TURBT), 2 cystoscopies, 1 chemotherapy treatment

James C. Mahan
U.S. District Judge

- 5 -

following the third bladder surgery, and 9 Bacillus Calmette-Guerin (BCG) treatments." (ECF No. 1-1 at 3). Plaintiff also "undergoes a cystoscopy every 3 months." *Id.*

Defendant submits the affirmation of Dr. Anobel Odisho, who indicated that "based on [his] own professional experience and the medical literature, it is clear that the usual and customary lifetime cost for care and treatment of a patient with bladder cancer exceeds $75,000." (ECF No. 10-1 at 2). Dr. Odisho further indicates that "[a] study, published in 2014, reported that the lifetime expected cost for bladder cancer was $102,700, in 2013 dollars." *Id.* at 2–3 (citing Yeung, Christina, et al. "The Health Economics of Bladder Cancer: An Updated Review of the Published Literature." PharmacoEconomics, vol. 32, no. 11, Nov. 2014, pp. 1093–104. Crossref, doi:10.1007/s40273-014-0194-2). Dr. Odisho notes that the complaint omits the cost of treatment for plaintiff's kidney cancer, which "would be in addition to his bladder cancer treatment costs." *Id.* at 3.

Further, defendant points to several other cases where a pharmaceutical product was alleged to cause cancer. (ECF No. 10 at 6–7). In these cases, juries awarded millions of dollars in punitive damages. *Id.* (citing *Allen v. Takeda*, 2008 WL 876652 ($9 million in punitive damages awarded in case alleging diabetes medication caused bladder cancer); *Rowatt v. Wyeth*, 2008 WL 876652 ($99 million in punitive damages awarded in case alleging hormone replacement therapy caused breast cancer); *Wooderson v. Ortho Pharma. Corp.*, 1984 WL 320309 (Kan. Jan 1, 1984) ($2.75 million in punitive damages awarded in case alleging oral contraceptive caused kidney failure and hypertension); *Wirt v. Am. Home Prods. Corp.*, 99-cv-0307, 2000 WL 1266416 (Or. Dist. Ct. May 1, 2000) ($12.45 million in punitive damages awarded in case alleging diet medication caused heart damage); *Batson v. Am. Home Prods. Corp.*, 99-cv-0306, 2000 WL 1266414 (Or. Dist. Ct. May 1, 2000) ($12.9 million in punitive damages awarded in case alleging diet medication caused heart damage)).

Even if the court applied a "conservative" estimate at a 1:1 ratio of punitive to economic damages,[2] plaintiff's past and future costs of care for two different forms of cancer would need

---

[2] *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (noting that the district court in that case "conservatively estimated" punitive damages "at a 1:1 ratio to

James C. Mahan
U.S. District Judge

1   to amount to only $37,500 to meet the amount in controversy. Notably, this is without
2   considering any of plaintiff's other requested relief.

3   In reply, plaintiff argues only that defendant has not sufficiently described the facts of
4   this case and, as a result, its arguments regarding damages are speculative. (*See generally* ECF
5   No. 12). The court disagrees. The allegations in the complaint, on their face, indicate that
6   plaintiff's condition is serious, has required treatment, and will continue to require treatment.
7   The evidence defendant submitted—the expert opinion of Dr. Odisho and the punitive damages
8   awards in other pharmaceutical-cancer cases—rise above speculation: the amount in controversy
9   is likely to exceed $75,000.

10  The court finds that the amount in controversy is met. The court has jurisdiction over this
11  action and denies plaintiff's motion to remand accordingly.

12  *B. Stay*

13  The court notes that the CM/ECF system did not automatically generate a response
14  deadline when defendant filed the instant motion to stay. (ECF No. 11). Thus, plaintiff has not
15  responded to the motion. However, plaintiff's principal concern—and the basis for his motion to
16  expedite—has been the propriety of defendant's removal. (ECF Nos. 6; 7). The court finds that,
17  having ruled on plaintiff's motion to remand, the motion to stay is ripe for consideration.

18  The Judicial Panel on Multidistrict Litigation ("JPML") has already conditionally
19  transferred this action to the Zantac MDL. (ECF No. 11 at 3). Plaintiff opposes the transfer and,
20  as a result, the transfer issue is being before the JPML. *Id.* Defendant expects that the JPML
21  will decide whether to transfer this action sometime in July or August. *Id.* at 3–4.

22  In the meantime, the court finds that judicial economy is best served by staying this
23  action. Accordingly, the court grants defendant's motion and stays this action pending transfer
24  to the MDL.

25  . . .
26  . . .

---

27  economic damages").
28

**James C. Mahan**
**U.S. District Judge**

- 7 -

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to remand (ECF No. 6) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion to stay (ECF No. 11) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that this action be, and the same hereby is, STAYED pending transfer to the Zantac MDL.

DATED April 13, 2020.

_____
UNITED STATES DISTRICT JUDGE